UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

RICHARD BLAUSTEIN, ET AL.                CIVIL ACTION

VERSUS                                   NO: 08-1357
                                            c/w 08-2004

BURT DAVID HUETE, ET AL.                 SECTION: "J" (5)


                              **ORDER**

   Before the Court is Defendants Christopher Maier, Timothy Maier, and Maier & Maier, PLLC (collectively "the Maier Defendants")'s Motion to Dismiss (Rec. Doc. 150) and Burt David Huete ("Huete")'s Opposition (Rec. Doc. 153). The Court granted Richard Blaustein an extension of time for filing his opposition until December 10, 2010; however, as of December 20, 2010, no such opposition has been filed. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that Defendants' motion should be **GRANTED.**

**PROCEDURAL HISTORY AND BACKGROUND FACTS:**

   This litigation arises out of a dispute over the ownership and patent rights to wireless tracking technology referred to by

the parties as the Stalker Technology. In October 2006, Huete filed an application for the Stalker Provisional Patent, which listed Huete, Richard Blaustein, Gail Blaustein, and Ben Hennington as co-inventors.  Soon after, the inventors formed Special Projects Limited, LLC ("SPL") for the purpose of marketing and exploiting the Stalker Technology. SPL then hired the Maier Defendants – patent law firm, Maier & Maier PLLC – to serve as patent counsel. SPL and the Maiers entered into a written fee agreement detailing the representation. The agreement, which contained a binding arbitration clause, listed SPL as the client, with Huete and Richard Blaustein serving as signatories for SPL.

In 2007, the Stalker Technology patent holders, who were also SPL members, agreed to assign the Stalker Provisional Patent to SPL. On August 21, 2007, SPL received the Provisional Patent Assignment forms from Maier & Maier PLLC. At that point the members had planned to sign the assignment forms, but for disputed reasons Huete refused to sign. Around September 25, 2007, by a unanimous vote of the membership except for Huete, Huete was removed as a member of SPL for acts of misconduct and breaches of his fiduciary duty. Huete disputes the legality of this action to remove him from SPL. Additionally, around this same date the members of SPL, again without Huete participating, voted to dissolve the LLC. Subsequently, Huete allegedly directed

SPL's patent counsel to file the Non-Provisional Patent Application for the Stalker Technology, listing Huete as the first inventor. That application was filed by counsel on November 1, 2007. The United States Patent and Trade Office assigned the application the number 11/979295, listing Huete as the first named inventor.

Furthermore, in October 2007, Huete filed a lawsuit in the 24th Judicial District for the Parish of Jefferson against defendants SPL, Richard Blaustein, Gail Blaustein, Charles Custer, Ben Hennington, and Dynasty Venture, LLC.  Huete sought declaratory and injunctive relief barring his "removal as the inventor of the Stalker Technology and the Patent" and barring his removal "as a member and owner of SPL" and declaratory judgments that he is "an inventor and owner of the Stalker Technology and Patent" and "owns an interest in SPL."  Huete asked for actual, compensatory and statutory damages for the alleged wrongful activities of the defendants.

On March 19, 2008, the Blausteins filed suit in federal court against Huete.  The Blausteins' complaint controverted the allegations made by Huete in the state court action. Additionally, the Blausteins sought declaratory judgment regarding their status as inventors of the Stalker Technology and monetary damages.  In addition to defending their status as inventors of the Stalker Technology, the Blausteins also sought

3

to remove Huete from the Stalker Patent. Huete answered the Blausteins' complaint generally denying all of the allegations, asserting various counterclaims, which are similar to his state court claims, and asserting third party claims, which are also similar to the state court claims, against the remaining original state court defendants: Charles Custer, Ben Hennington, Dynasty Ventures, LLC, and SPL. On April 28, 2008, the defendants in the state court action removed that suit to federal court. Subsequently, on May 13, 2008 the removed suit was combined with the Blaustein suit.

    In October of 2008, the Blausteins amended their complaint and impleaded the Maiers asserting what amounted to claims of legal malpractice. On February 5, 2009, Huete filed a Cross-Claim against the Maiers, also essentially alleging legal malpractice and breach of a fiduciary duty. On June 12, 2009, Huete filed for leave of court to amend the claims against the Maiers to include allegations of fraud. Leave to file the amended complaint was granted by the Court on July 1, 2009. The Maiers filed a Motion to Dismiss and/or Stay arguing that the claims against them should be dismissed as this Honorable Court lacked personal jurisdiction; alternatively, the Maiers requested that the Court compel the parties to arbitrate their claims pursuant to the Representation and Fee Agreement under which the legal services of the Maiers were procured, and which Blaustein and Huete

executed. This Court held that Huete was a party to the fee agreement between the Maiers and SPL and dismissed all of Huete's claims pursuant to the binding arbitration clause in that contract (Rec. Doc. 116). On appeal, the Fifth Circuit reversed, noting that the mere fact of Huete's signature as a representative of SPL was not enough to bind Huete individually to the contract. In its ruling, however, the Fifth Circuit pointed out that the case could possibly be dismissed for a variety of other reasons, including, but not limited to, whether Huete was in fact a client of the Maiers, and thus whether he has any claims against the Maiers separate from those assertable on behalf of SPL, LLC. The Fifth Circuit also noted that it was possible Huete could still be held to the arbitration agreement as a non-party beneficiary.

**THE PARTIES ARGUMENTS:**

The Maier Defendants request dismissal of all claims against them, arguing that this Court lacks personal jurisdiction over the Maiers, Virginia attorneys, and their Virginia law firm. Additionally, the Maiers assert that they did not have an attorney-client relationship with Huete. As such, there are no legal grounds upon which Huete can make a claim for legal malpractice against the Maiers. Moreover, if an attorney-client relationship did exist, Defendants argue that any and all claims of legal malpractice have prescribed and should be dismissed.

Additionally or alternatively, the Maier Defendants contend that Huete has failed to state a cause of action, as he has not sustained any actual damage as a result of any of the Maiers' actions. Finally, the Maier Defendants submit that Huete, as a third party beneficiary of the Representation and Fee Agreement between Special Projects Limited, LLC and the Maiers, is bound by the mandatory arbitration agreement relating to matters arising out of the legal representation afforded.

   Huete responds arguing that Defendants' Motion to Dismiss does not meet the standard as articulated by the Supreme Court precedent interpreting Rule 12(b). Huete argues that personal jurisdiction of this Court is proper due to the Maiers' purposeful contacts with Louisiana, in combination with their actions' foreseeable harmful effects in Louisiana. Huete also argues that he is not bound by the Fee Agreement's Arbitration Provision. Huete asserts that the direct benefit estoppel theory does not apply in this case, arguing that the position advocated by the Maier Defendants is overly broad. Regarding the Maiers' prescription argument, Huete contends that prescriptive period started to run when Huete acquired actual knowledge of the Maiers' conduct, which did not occur until May 8, 2009, "when Richard Blaustein described in a pleading filed with this Court that the Maiers and Blaustein conceived a plan to destroy and convert Huete's rights" (Rec. Doc. 153, at 20). Finally, Huete

argues that he sufficiently pleads damages in his complaint, showing that the Stalker and patent had value, that third parties were negotiating the patent, and that, as a result of the Maiers' conduct, Huete was damaged.

**DISCUSSION:**

The Representation and Fee Agreement signed by the Maier Defendants and SPL contains an arbitration clause, as well as a forum selection clause. The Maiers argue that this Agreement is binding on Huete because a non-signatory can be held to an agreement in some circumstances. Conversely, Huete contends that because he signed the Agreement only in his capacity as a member of SPL, he should not be individually held to the agreement.

While arbitration agreements generally do not apply to nonsignatories, there are circumstances when a third party will have to submit to arbitration, as required by a written agreement to arbitrate. "Direct-benefit estoppel 'involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.'" Hellenic Inv. Fund, Inc. v. Det Norske Veritas, 464 F.3d 514, 517-18 (5th Cir. 2006) (citing E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 200 (3d Cir.2001)). The direct-benefit estoppel doctrine "applies when a nonsignatory 'knowingly exploits the

agreement containing the arbitration clause.'" Id. at 518 (citing Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 361-62 (5th Cir. 2003)). Where the nonsignatory brings suit against a signatory premised in part on the agreement, "the courts seriously consider applying direct benefits estoppel." Id. (citing Bridas, 345 F.3d at 362).

Huete's claims against the Maiers clearly stem from the agreement between the Maiers and SPL. Huete's Complaint alleges that "[a]n attorney-client relationship was formed between Huete, on one hand, and the Maier Defendants, on the other hand" (Rec. Doc. 85, at 7). Huete seeks to recover from the Maiers because they "failed to exercise reasonable care, skill and diligence in performing legal services for SPL, Huete and other inventors" (Rec. Doc. 85, at 10). The Complaint states that "had Maier exercised proper care, skill and diligence in the foregoing matter, Huete's valuable technology would have been afforded the filing date of the provisional patent, thus preserving and providing to Huete valuable patent rights to the Stalker Technology" (Rec. Doc. 85, at 10). Finally, Huete's complaint asserts that the "actions of Timothy Maier, Christopher Maier and Maier & Maier PLLC constitute legal malpractice, negligence, breach of fiduciary duty and breach of an implied contract" (Rec. Doc. 85, at 10-11).

Because Huete's claims are premised on the agreement, this Court must "seriously consider applying direct benefits estoppel." Hellenic Inv. Fund, Inc., 464 F.3d at 518. Having reviewed the record, the Court is convinced that Huete directly benefitted from the Representation and Fee Agreement with the Maiers. In fact, Huete's recitation of facts admits that the Maiers' "legal services were really for the benefit of the inventors" (Rec. Doc. 153, at 5). Huete claims to be an inventor, hence, the agreement was entered into in part for Huete's benefit. Pursuant to the Agreement, the Maiers drafted and filed the non-provisional application and Huete was listed as a co-inventor.  The Court agrees with the Maier Defendants that Huete benefitted directly from the Agreement as an inventor and an individual, in that he did not have to retain and compensate his own patent counsel to draft and file the non-provisional patent application. Huete cannot reap the benefits under the Agreement, and then completely disavow the Agreement in its entirety and, at the same time, claim he suffered damages as a result of a violation of the Agreement.

Because the Court concludes that Huete directly benefitted from the Representation and Fee Agreement, he is estopped from relying upon his non-signatory status to avoid the arbitration and forum selection clauses of the Representation and Fee Agreement.

Accordingly, **IT IS ORDERED** that **Defendants' Motion to Dismiss Pending Arbitration (Rec. Doc. 150) is GRANTED.** All claims against the Maier Defendants are hereby **DISMISSED without prejudice**.

New Orleans, Louisiana this the 21st day of December, 2010.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE